IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO


CHRISTINE ANCHONDO,

       Plaintiff,


v.                                    CIV  NO. 02-1271 WDS


JO ANNE B. BARNHART, Commissioner
of the Social Security Administration,

       Defendant.


# MEMORANDUM OPINION AND ORDER


**THIS MATTER** comes before the Court on Plaintiff's Motion to Reverse or Remand the Administrative Agency Decision.  (Doc. No. 15).  The Commissioner of Social Security issued a final decision finding that the Plaintiff was not disabled because she could perform her past relevant work and denied her Supplemental Security Income benefits.  The Plaintiff moved this Court to reverse the final decision or to remand the Administrative Decision for further proceedings.  Having considered the Motion, the memoranda submitted by the parties, the entire administrative record and the applicable law, the court finds that the Motion to Reverse or Remand the Administrative Agency Decision is not well taken and will be DENIED.


## I. PROCEDURAL RECORD

Plaintiff Christine Anchondo protectively filed her application for Supplemental Security Income (SSI) benefits on November 1, 2000 alleging a disability since May 25, 1996 due to chronic pain in her left leg and back.  Tr. 93-95, 99-116.  The medical evidence also established that she suffered from depression. Tr. 16.

The Commissioner's Administrative Law Judge (ALJ) conducted a hearing on February 12, 2002.  At the hearing the Plaintiff was represented by a representative but not an attorney.  Tr. 33-58.

On July 12, 2002, the ALJ issued his decision finding that the Plaintiff was not disabled. The ALJ made the following conclusions according to the sequential analysis set forth in 20 C.F.R. §404.1520(a)-(f) and *Thompson v. Sullivan*, 987 F. 2d 1482, 1487 (10th Cir. 1993):

1) the claimant has not engaged in substantial gainful activity since the alleged onset of her disability;

2) the claimant has an impairment or combination of impairments considered "severe" based on the requirements in the Regulations 20 CFR §416.920 (b);

3) the medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4;

4) the claimant's allegations regarding her limitations are not totally credible for reasons set forth in the body of the decision;

5) the ALJ carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments;

6) the claimant has the following residual functional capacity (RFC): lifting and carrying up to 20 pounds occasionally and 10 pounds frequently; stand, sit and walk at least 6 out of 8

2

hours for each activity; occasionally climb stairs/ramps, balance. stoop, kneel, crouch and crawl; never climb ladders, scaffolding or ropes; avoid moderate exposure to extreme cold; and is limited to simple, repetitive work;

7) the claimant's past relevant work as stocker and cashier did not require the performance of work-related activities precluded by her residual functional capacity;

8) the claimant's medically determinable history of left tibial fracture; status post removal of tumor, left leg; with subsequent removal of surgically implanted hardware; history of mechanical low back pain; a major depressive disorder; and a chronic pain syndrome do not prevent the claimant from performing her past relevant work;

9) the claimant was not under a "disability" as defined the in the Social Security Act, at any time through the date of the decision (20 CFR §416.920(e)). Tr. 20.

Plaintiff had previously filed an application for disability benefits which was denied on December 22, 1998.  The ALJ found that the previous decision was final.  Consideration was only given to the issue of claimant's disability since December 23, 1998. Tr. 14.

On the date of the ALJ's decision, the claimant was 36 years old and had a high school education.  Tr. 15.

The Plaintiff filed a timely request for review and submitted additional evidence.  Tr. 381-384.  The Appeals Council issued its final decision on August 19, 2002 denying Plaintiff's request for review and upholding the decision of the ALJ.  Tr. 6-8.

The Plaintiff filed her complaint for court review of the ALJ's decision on October 9, 2002.  (Doc. No. 1).

## II.  STANDARD OF REVIEW

This Court reviews the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied.  *Andrade v. Secretary of Health and Human Svcs.*, 985 F. 2d 1045, 1047 (10th Cir. 1993).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Fowler v. Bowen*, 876 F.2d 1451, 1453 (10th Cir. 1989) (quotations omitted). It is not the function of the courts to re-weigh the evidence but to determine upon the record as a whole whether the Commissioner's decision is supported by substantial evidence.  *Hamilton v. Secretary of Health and Human Svcs.*, 961 F. 2d 1495, 1497-1498 (10th Cir. 1992).

In order to qualify for disability insurance benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months, which prevents the claimant from engaging in substantial gainful activity.  42 U.S.C. §423(d)(1)(A).  The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing a disability application.  20 C.F.R. 404.1520(a-f).  The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled.  *Williams v. Bowen,* 844 F. 2d 748, 750-752 (10th Cir. 1988).

At the first four levels of the sequential evaluation process, the claimant must show she is not engaged in substantial gainful employment, she has an impairment or combination of impairments severe enough to limit her ability to do basic work activities and her impairment meets or equals one of the presumptively disability impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or she is unable to perform work she had done in the past.  20

C.F.R. §§404.1520 and 416.920.  At the fifth step of the evaluation, the burden of proof shifts to

the Commissioner to show the claimant is able to perform other substantial gainful activity

considering her residual functional capacity, age, education, and prior work experience.

*Thompson v. Sullivan*, *supra*.


## III. DISCUSSION

Plaintiff presents three arguments - 1) that the ALJ's residual functional capacity (RFC)

finding is unsupported by substantial evidence and is legally erroneous; 2) that the ALJ's finding

at step four that Plaintiff could perform her past relevant work is unsupported by substantial

evidence and is legally erroneous; and 3) that the ALJ's credibility determination is unsupported

by substantial evidence and is legally erroneous.  The Commissioner argues that the ALJ's

findings are supported by substantial evidence in the record and that the ALJ correctly applied the

law.  The Commission concedes that two mistakes were made in the ALJ's determination - that

the Plaintiff had the RFC to perform her past relevant work as a stocker, and that the medical

record showed that Plaintiff had the ability to walk for 60 minutes, when it actuality 60 minutes

was a goal she stated during physical therapy.  Tr. 138. The Commissioner asserts however that

both mistakes of fact were harmless in the course of the determination.


## PLAINTIFF'S RESIDUAL FUNCTIONAL CAPACITY

5

<u>Physical Residual Functional Capacity</u>

The ALJ found that the Plaintiff had a history of a left tibial fracture, status post removal of a benign tumor in her left leg with the subsequent removal of the surgically implanted hardware, a history of mechanical back pain, a major depressive disorder and a chronic pain syndrome. Tr. 16. These impairments were severe but not severe enough to meet or medically equal one of the listed impairments in the Social Security regulations. Tr. 16. Moving to the fourth step of the required analysis, the ALJ had to make a determination whether the Plaintiff retained the residual functional capacity (RFC) to perform the requirements of her past relevant work.

Residual functional capacity is defined as "what an individual can still do despite his or her limitations." *S.S.R. 96-8p*, page 2. It does not represent the least an individual can do but the most. *Id.* Plaintiff argues that there should have been a RFC Assessment from a treating or examining physician. The RFC Assessment was completed by a consulting physician. Tr. 243-250.

A Disability Determination Examination was conducted by Dr. Anthony Reeve on January 2, 2001 on behalf of the Commissioner. Tr. 213-216. After his examination, Dr. Reeve concluded that the Plaintiff was capable of working at light to sedentary duty for eight hours a day with restrictions on elevated surfaces, ladders, hazardous duties and cold weather. Tr. 216. The Physical RFC Assessment was completed by Dr. Nickerson on February 19, 2001. Tr. 243 - 250. It was reviewed and affirmed by Dr. Mark Werner on July 2, 2001. Tr. 250. Dr. Nickerson noted Plaintiff's history of back and leg pain, pain on the palpitation of her leg knee, her treating physician's recommendation that she use a cane or crutch, and the results of her physical

6

examination.  Dr. Nickerson determined that Plaintiff could lift 20 pounds occasionally, 10 pounds frequently, stand, walk or sit about 6 hours in a 8 hour workday and push and pull without limitation.  He found no other limitations. Tr. 243-250.  From this RFC Assessment, the examination by Dr. Reeve and her treating and examining physicians' notes, the ALJ determined the Plaintiff had the RFC to lift and carry 20 pounds occasionally and 10 pounds frequently, stand, sit and walk at least 6 out of 8 hours for each activity, occasionally climb stairs/ramps, balance, stoop, kneel, crouch and crawl, never climb ladders, scaffolding or ropes, avoid moderate exposure to extreme cold and be limited to simple, repetitive work.  Tr 19.

Her treating physicians, including her physicians in her hometown, her orthopedic specialists, the Lovelace Pain Clinic physicians and her oncology surgeon did not make a physical assessment of her limitations in their records. They did not discuss limitations or make recommendations as to activities which Plaintiff should not or could not engage in.  Her treating physicians or physical therapists reported symptoms that Plaintiff reported to them, e.g., recurrent pain in her left leg, left knee and lower back and pain after walking for 20 - 30 minutes, Tr. 138, and reported their attempts to alleviate her symptoms. The only reference to any  physical limitation which Plaintiff might have had was a notation in the record dated December 30, 1999 by the Physician's Assistant (PA) at the Roswell Osteopathic Clinic, her primary source of medical care in her hometown.  The PA, Carrie Flury, noted that Plaintiff presented today "needing a letter stating she cannot work for Welfare.  I wrote a letter stating I agree with Dr. Galante [her original orthopedic physician], but I wasn't a specialist and didn't say for sure of not working, but the patient was happy with these results."  Tr. 171.

The requirement that the ALJ should order a RFC assessment only applies when no other

RFC assessment is in the record.  *Rivera-Torres v. Secretary of Health and Human Svcs.*, 837 F.

2d 4, 6 (1st Cir.1988); *Gathright v. Shalala*, 872 F. Supp. 893, 898 (D. N.M. 1993).  The RFC

assessment was completed by a consulting physician who in turn relied on the physical findings,

the treatment notes and the medical findings of Plaintiff's examining and treating physicians.  The

ALJ did not commit error by not ordering another RFC assessment.

       Plaintiff argues that the ALJ's assessment of her RFC is incorrect because he failed to

consider two diagnoses of examining physicians - Dr. Ramage and Dr. Bryant.  Dr. Ramage, a

rheumatologist, examined Plaintiff on January 7, 2002. After examining Plaintiff Dr. Ramage

discussed the possibility of fibromyalgia.  ""She has trigger points, so immediately in this setting,

especially in the setting of depression, one worries about fibromyalgia. ... One cannot jump to the

conclusion of fibromyalgia without supporting evidence."  Tr. 354.  Dr. Ramage listed

fibromyalgia as one of many items on the "Problem List". Tr. 356.  After receiving the laboratory

tests, which were all negative, Dr. Ramage wrote a summary on February 4, 2002.  He concluded

that Plaintiff had deep-rooted psychological problems, did not have a rheumatic disease, and that

he did not have anything to offer her.  Tr. 351.  He noted a constant theme of disability and

frustration as well as her "cry for help".  Tr 351.

       Looking at the entire record from Dr. Ramage, it is entirely unclear that he has diagnosed

Plaintiff with fibromyalgia.  Tr. 351-361.  He ordered a complete work up for rheumatic diseases

including x-rays of her hands and feet.  His summary, prepared after he received the results of the

lab tests, did not mention fibromyalgia.  Even if Dr. Ramage can be considered, after examining

the record as a whole, to have diagnosed Plaintiff with fibromyalgia, a diagnosis alone does not

constitute a finding upon which an ALJ is required to find a disability.  *Potter v. Secretary of*

*Health and Human Svcs.*, 905 F. 2d 1346 (10th Cir. 1990).  In *Potter*, the claimant was finally

diagnosed, after many years of unexplained symptoms, with the progressive disease of multiple

sclerosis.  The issue was whether she had been disabled from her disease at a certain time in the

past.  The Court noted that although a treating physician can provide a retrospective diagnosis of

a claimant's condition, the issue is whether the claimant was disabled.  "A retrospective diagnosis

without evidence of actual disability is insufficient." *Potter, supra*, at 1349.  Thus, even if Dr.

Ramage is considered to have given Plaintiff a retrospective diagnosis of fibromyalgia, the record

as a whole still supports the ALJ's finding that Plaintiff had the RFC to do light work with a few

restrictions.

Plaintiff also argues that the ALJ failed to discuss Dr. Ramage's diagnosis of fibromyalgia.

Tr. 17.  The ALJ is required to carefully consider all the relevant evidence but he is not required

to discuss every piece of evidence.  *Clifton v. Chater,* 79 F. 3d 1007, 1009-1010 (10th Cir. 1996).

The ALJ must, however, discuss the uncontroverted evidence he chooses not to rely upon.  *Id.*, at

1010.  As previously discussed, Dr. Ramage's report does not contain a clear diagnosis of

fibromyalgia.  Furthermore, a diagnosis alone is not uncontroverted evidence of a disability.

*Potter, supra*.  The ALJ did not err in failing to discuss Dr. Ramage's ruminations about a

possible diagnosis and a possible explanation for Plaintiff's complaints.

Dr. Bryant was another examining physician.  After her hearing before the ALJ, Plaintiff

was examined by orthopedic surgeon Dr. Frank Bryant from Alamogordo.  After looking at her

medical records and examining the Plaintiff, Dr. Bryant concluded "the most likely diagnosis is

reflex sympathetic maintained pain syndrome."[1]  Tr. 384.  He concluded that he was unable to treat her surgically and her prognosis was grim because her condition had gone on for a number of years.  From an orthopedic view, he considered her essentially totally disabled and concluded it was unlikely that Plaintiff would ever be gainfully employed. Tr. 384.

Dr. Bryant's report was submitted to the Appeals Council. Tr. 8. Plaintiff argues that it was error for the Appeals Council not to discuss the new evidence.  *See*, *Stephens v. Callahan*, 971 F. Supp. 1388 (N.D. Okla. 1997).   The Appeals Council considered the new evidence but concluded that it did not provide a basis for changing the ALJ's decision.  Tr 6.  It did not discuss the evidence in detail.  Tr. 6.

The Tenth Circuit has ruled that the new evidence which was presented to the Appeals Council becomes part of the administrative record to be considered by this Court when evaluating the Commissioner's decision to see if it is supported by substantial evidence.  *O'Dell v. Shalala*, 44 F. 3d 855, 859 (10th Cir. 1994).  The Tenth Circuit has not held that it was error for the Appeals Council to fail to discuss an examining physician's report presented to it after a hearing before the ALJ.  *See*, *Stephens v. Callahan*, *supra* at 1391-92.  Instead, the Tenth Circuit  in *O'Dell* has emphasized that the new evidence is to be considered as part of the record as a whole by the reviewing court.

Dr. Bryant's report contains not only a diagnosis, like Dr. Ramage's report, but also states

---

[1]Reflex Sympathetic Pain Syndrome, commonly called Reflex Sympathetic Dystrophy Syndrome (RSD or RSDS) or Complex Regional Pain Syndrome (CRPS) is a chronic pain condition believed to be the result of dysfunction in the central or peripheral nervous system out of proportion to the severity of the injury.  The condition gets worse rather than better over time. National Institute of Neurological Disorders and Stroke, National Institutes of Health, www. ninds.nih.gov/health_and_medical /pubs/rsds_fact_sheet

that from an orthopedic point of view, the Plaintiff is essentially totally disabled.  Tr. 384.  The reviewing court must look to the record as a whole to see if the ALJ's determination is supported by substantial evidence.

The ALJ had numerous medical records before him dating from December 23, 1998 through March 21, 2002.  Not one those records concluded that Plaintiff was disabled from an orthopedic view.  Plaintiff's treating physicians' notes included reports of pain and various complaints and noted that Plaintiff walked with a cane.  However, as the ALJ noted, there are few, if any, explanations for the claimant's testimony that she unable to perform any activity.  Tr. 17.  Diagnostic tests of her leg and back after the surgery to remove the hardware showed healing consistent with her previous injury and stable findings.  Tr. 326-334, 337.  Her orthopedic oncology surgeon who removed the hardware from her leg on March 24, 2000, noted in June, 2000, that the "screw holes were filling in nicely."  He recommended that she move to progressive weight bearing on the leg and see a sports medicine physician for continued treatment.   Tr. 335-336.  Her Lovelace orthopedic physicians, whom she saw from December 2, 1998 through the end of 2001, also noted her pain, the normal findings on her diagnostic tests and their attempts, with the Lovelace Pain Clinic, to alleviate her complaints.  Tr. 300-334.  None of her treating physicians from the University of New Mexico or Lovelace ever diagnosed her with RSD or noted that she was disabled from an orthopedic standpoint.  None of her orthopedic physicians noted limitations on weight bearing, lifting, standing, walking or sitting in their treatment notes.  Tr. 300-325, 335-341.  To the contrary, the overall tenor of the treatment notes was that of slow progress, multiple attempts with medications or procedures to alleviate Plaintiff's symptoms and specific recommendations for Plaintiff to follow to alleviate pain - e.g., attend "back school" in

Albuquerque, wear a lumbar corset, and use a TENS (transcutaneous electrical nerve stimulation) unit regularly.  Tr. 300-325.  The ALJ's findings that Plaintiff had the RFC to perform light work with some minor limitations on cold, elevated surfaces and ladders, is supported by substantial evidence in the record, not withstanding the examining physician Dr. Bryant's report.

Lastly, Plaintiff argues that the ALJ failed to logically explain the effects of Plaintiff's symptoms on her ability to work.  The RFC assessment must be based on "all the relevant evidence in the case records such as ... effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment."  *SSR 96-8p*, page 4.  While the Plaintiff consistently complained of left leg and knee pain as well as back pain to her treating and examining physicians, the ALJ noted "the medical evidence fails to support the claimant's complaints of pain and result in limitations."  Tr. 18.  The Plaintiff claimed to be able to walk up to 20 minutes without pain, but the ALJ discounted her testimony about this limitation.  Tr. 18. The ALJ granted very little credibility regarding her pain and her limitations resulting from that pain.  Thus, the ALJ found that pain and her resulting limitations, were not reasonably attributable to a medically determinable impairment.  Instead, he found that the findings of fact made by the state agency physicians with the additional limitations noted by Dr. Reeve were consistent with the overall evidence in the record. Tr. 18, 213-216, 243-250.

### Mental Residual Functional Capacity

Plaintiff was examined by DDS physician Dr. Hickey on January 31, 2001 and given a diagnosis of Major Depression, chronic, and Pain Disorder.  Dr. Hickey noted that Plaintiff had difficulty concentrating and that her pain was contributing to her depression. Tr. 217-219.  In

February, 2001, Dr. Gabaldon performed a Mental Functional Capacity Assessment. Tr. 222-239.

He concluded that Plaintiff had the capacity to understand and remember, had some limited

capacity to attend or concentrate and that she appeared to have the capacity to socialize and

adapt. He also diagnosed her with Major Depression, Pain Disorder and a Somatoform Disorder.

Tr. 224, 226. He determined that she had mild restrictions in her activities of daily living, mild

difficulties in maintaining social functioning and moderate difficulties in maintaining concentration

or persistence. Tr. 236.

Plaintiff began going to Counseling Associates, Inc. in Roswell on August 27, 2001. Tr.

362. She began a new medication and began seeing a therapist, Rosalie Obregon, LISW. Tr.

365, 367. On March 21, 2002, Ms. Obregon noted that Plaintiff still had symptoms of depression

but that she was able to visit with her boyfriend's family a couple of times. Tr. 368. On the same

day, Dr. Guillermo Pezzarossi, a psychiatrist and the Medical Director of Counseling Associates,

Inc., answered interrogatories on behalf of Plaintiff. Tr. 372-378, 371, 379. He noted that he

first began seeing Plaintiff on September 13, 2001 and was seeing Plaintiff currently. Tr 372. Dr.

Pezzarossi also diagnosed Plaintiff with Depression and some Somatoform symptoms, Tr. 372,

376, but also found that she had serious limitations in her abilities to relate to co-workers, deal

with work stresses, maintain concentration and perform other work functions. Tr 371, 379.

The ALJ noted Dr. Pezzarossi's findings but did not give significant weight to the

assessment completed by Dr. Pezzarossi. Tr. 18-19. The ALJ found it was unclear what specific

relationship Dr. Pezzarossi had with the Plaintiff because the initial evaluation at Counseling

Associates, Inc., in August, 2001 and subsequent treatment notes were not signed by Dr.

Pezzarossi. Tr. 18. The ALJ found that the record contained no explanation for the limitations

noted by Dr. Pezzarossi except the Plaintiff's own complaints of pain.  Tr. 18-19.  Most

significantly, the ALJ contrasted the treatment notes from Ms. Obregon, LISW,  with the

interrogatories completed the same day by Dr. Pezzarossi and found inconsistencies as to the

Plaintiff's functional abilities and her noted improvement.  Tr. 19.  Finding that there was no basis

to find that Dr. Pezzarossi had treated Plaintiff for a sufficient period of time, the ALJ found he

did not need to give significance to the assessment completed by Dr. Pezzarossi on March 21,

2002. Tr. 19.

Plaintiff argues that it was error for the ALJ to conclude that Dr. Pezzarossi was not a

treating physician.  Plaintiff further argues that since Dr. Pezzarossi was one of her treating

physicians, it was error for the ALJ to reject Dr. Pezzarossi's assessment of Plaintiff's mental

limitations in the workplace.  The opinion of a treating physician concerning the nature and extent

of a claimant's disability is entitled to "controlling weight" when it is "well-supported by the

medicably acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with

the other substantial evidence in [the claimant's] case record. 20 C.F.R. §416.927(d)(2). *Doyal*

*v. Barnhart*, 331 F. 3d 758 (10th Cir. 2003).   In determining whether a physician is a treating

physician, the regulations look to the length of the treatment relationship, the frequency of

examinations, and the nature and extent of the relationship. *Doyal, supra,* at 763.  The record is

devoid of any treatment notes, dates of examination or any notes as to the extent of the

relationship between Plaintiff and Dr. Pezzarossi.  The only evidence in the record is the notation

that he was the medical director and psychiatrist at Counseling Associates, Inc. and that he had

treated Plaintiff since September 13, 2001.  Tr. 372.  Plaintiff also testified at her hearing that Dr.

Pezzarossi was treating her for depression.  Tr. 45.  The ALJ was correct in finding that this

evidence did not establish that Dr. Pezzarossi was a treating physician as defined by the Social Security regulations.  See, 20 CFR §416.927(d)(2)(i).  Since Dr. Pezzarossi was not a treating physician, the ALJ was correct that he did not need to give significant weight to Dr. Pezzarossi's findings, especially as it was inconsistent with other substantial medical evidence in the record. See, e.g., Tr. 222-239.

## PAST RELEVANT WORK

The ALJ found that Plaintiff could perform her past relevant work as a cashier and a stocker.  Tr. 19.  The Commissioner concedes that Plaintiff could not perform her past relevant work as a stocker but argues that this mistake is irrelevant in light of the ALJ's finding that Plaintiff could perform her past relevant work as a cashier as well.  Past relevant work is work that 1) occurred within the past fifteen years, 2) was of sufficient duration that the worker was able to learn to do the job, and 3) was substantial gainful employment (SGA).  *Jozefowicz v. Heckler*, 811 F. 2d 1352, 1355 (10th Cir. 1987).  Plaintiff argues that her work as a cashier at Target does not qualify as SGA because her pay was below an average of $500 a month.  Plaintiff argues that depending on which exact time frame one uses for her work at Target, her average monthly pay was between $427 and $455.  20 C.F.R. §416.974, which contains the evaluation guides for SGA, explains that if one earned less than $300 a month during 1994, the year in which Plaintiff worked at Target, the presumption would be that the work would not be SGA. However, if one earned $500 a month or more, the presumption was that it would be SGA.  For those who earned between $300 and $500 a month, as did Plaintiff, the Commissioner will look to other information such as whether the Plaintiff's work was comparable to other people's work in

her community taking into account the time, energy, skill and responsibility of the work.

Plaintiff explained to Dr. Hickey that she was forced to leave her job as cashier at Target because her then husband was harassing her at work.  Tr. 217.  Plaintiff has listed her hourly compensation at Target as either $5.50 an hour, Tr. 101, or $4.20 an hour, Tr. 123.  She described her job in her Disability Report as running the cash register, processing credit cards, remembering codes for certain merchandise, straightening the store and stocking the shelves at the cash register.  Tr. 124.  Her description of her job duties, the rate of pay, and the skill necessary to do the cashier job qualifies her work as SGA in accordance with the Social Security Regulations. The work as a cashier was comparable in energy, skill and responsibility to other retail cashier jobs in the community. Plaintiff's past work as a cashier qualifies as past relevant work. *Jozefowicz v. Heckler*, supra.

Step four of the sequential analysis in disability cases consists of three phases.  First, the ALJ must evaluate the Plaintiff's RFC.  Secondly, the ALJ must determine the physical and mental demands of the Plaintiff's past relevant work.  In the third phase, the ALJ determines whether the Plaintiff has the ability to meet the job demands found in phase two despite the limitations determined in phase one. *Winfrey v. Chater*, 92 F. 3d 1017 (10th Cir. 1996).  Plaintiff argues that the ALJ failed to make the detailed findings of the physical and mental demands of the work she had done in the past.  At the hearing, the vocational expert testified that she had reviewed the Plaintiff's past work history and had determined that her cashier job at Target was light unskilled work. Tr. 54.  The ALJ asked the expert to assume Plaintiff can lift twenty pounds occasionally, lift ten pounds frequently, stand, sit or walk each up to six hours in an eight hour day, occasionally climb stair and ramps, balance, kneel, crawl, crouch but never climb ladders,

16

scaffolding or rope, avoid moderate exposure to extreme cold, and  perform only simple, repetitive work.  The ALJ then asked  whether Plaintiff was able to perform her past relevant work as a cashier with these limitations.  The vocational expert answered yes.  Tr. 55.

The Tenth Circuit has explained that an ALJ may rely on information supplied by the vocational expert at step four of the sequential analysis.  *Doyal v. Barnhart*, 331 F. 3d 758, 761 (10th Cir. 2003).  The ALJ may not delegate the analysis of step four to the vocational expert but he is entitled to rely on and quote approvingly information provided by the expert in moving through phases two and three of the sequential step.  The ALJ followed this procedure in the present case.  He relied on the vocational expert's expertise in determining the mental and physical demands of a cashier's job.  He then asked the expert, considering the particular physical and mental limitations of this Plaintiff, whether the Plaintiff would be able to perform her past relevant work.  Tr. 19.  As in *Doyal*, *supra*, this procedure is sufficient to satisfy the three phases of step four of the sequential analysis.

## CREDIBILITY DETERMINATION

The ALJ found that on occasions in his decision he determined that Plaintiff was not a credible witness and that her recitations of her condition were not accurate.  He therefore discounted her testimony and the medical experts' testimony which were based either in whole or in part on her recitation of her symptoms and history.  Tr. 19.

Credibility determinations are the province of the fact finder and the reviewing court will not upset those determinations when they are supported by substantial evidence.  *Kepler v. Chater*, 68 F.3d 387 (10th Cir. 1995).  Plaintiff argues that the ALJ did not link his findings as to

the Plaintiff's credibility to either substantial evidence in the record or to specific inconsistences as required in *Kepler, supra*.

In determining the weight and credibility to be given to the testimony of the Plaintiff at her hearing and to the physician's opinions, which were based upon the Plaintiff's recitation of her symptoms to them, the ALJ took into account the Plaintiff's memory, her manner while testifying at the hearing, her testimony of many complaints which had no basis in the treatment record, the consistency of her testimony with statements made on other occasions, and her interest, bias and her prejudice in light of all the evidence in the case.  Tr. 19.

While the ALJ did not make specific findings, for example, of the complaints to which she testified at her hearing which had no basis in the treatment record, the Court has been able to find many such examples in reviewing the record.  At her hearing on February 12, 2002,  Plaintiff testified that her "knees they always hurt", although her complaints to her physicians had been consistently that only her left knee or leg hurt.  Tr. 49.  There is no record before the hearing date that Plaintiff ever complained to one of her physicians of right knee pain.

Plaintiff testified at her hearing that she could not even walk half a block.  But on January 21, 2002, three weeks prior to her hearing,  Plaintiff reported to Dr. Blackburn at the Pain Management Clinic at Lovelace that she could walk for twenty minutes. *Compare* Tr. 49 with Tr. 295.  Plaintiff testified at her hearing that she was not able to pick up a gallon of water and that she was "all the time dropping everything", unable to make a fist or even open up a jar of peanut butter or pickles.  Tr. 50-51.  She stated she had problems brushing her teeth, raising her arms, shampooing her hair and had difficulties getting to the shower or bathtub.  Tr. 51-52.  None of these difficulties had been reported to her treating or examining physicians. *See e.g.*, Tr. 295-297,

18

251-275, 281-294, *but see* report of hands swelling November 27, 2001 to Carrie Flury, Tr. 282. As noted previously, credibility determinations are peculiarly the province of the fact finder. These examples demonstrate the importance of that tenet.  The fact finder, in this case the ALJ, is in the best situation to assess the manner, the demeanor and the memory of the Plaintiff. After reviewing the record before him, the ALJ is able to note the consistency of the Plaintiff's testimony before him with statements she made on other occasions.  The Court finds that the ALJ's credibility findings were closely linked to substantial evidence in the record and will not be disturbed.

## CONCLUSION

The decision by the ALJ was supported by substantial evidence in the record as a whole. The finding of the Plaintiff's residual functional capacity finding is supported by substantial evidence and is legally correct.  The ALJ's finding at Step Four that Plaintiff could perform her past work is supported by substantial evidence and is legally correct.  Lastly, the ALJ's credibility determination is also supported by substantial evidence and will not be disturbed upon review. The Plaintiff's Motion to Reverse or Remand the Administrative Agency's decision is DENIED.

W. DANIEL SCHNEIDER
UNITED STATES MAGISTRATE JUDGE